BARRY I. SLOTNICK (*Pro Hac Vice*)
bslotnick@loeb.com
DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
EDWARD K. LEE (SBN 294954)
elee@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4120
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendants
DEEP DISH PRODUCTIONS OF CHICAGO, LLC; ENDEMOL USA
HOLDINGS, INC.; BEAUTIFUL DAY PRODUCTIONS, LLC; STEVE
HARVEY; ALEX DUDA; RUSHION MCDONALD; NBCUNIVERSAL
MEDIA, LLC; TEGNA INC. (sued incorrectly as Gannett Company, Inc.);
HEARST TELEVISION INC. (sued incorrectly as Hearst Television, Inc.);
MEDIA GENERAL, INC.; LIN TELEVISION CORPORATION; LOCAL
TV, LLC; NEXSTAR BROADCASTING GROUP, INC.; SINCLAIR
BROADCAST GROUP, INC.; TIME WARNER CABLE, INC.; DIRECTV,
LLC; AT&T SERVICES, INC. (sued incorrectly as AT&T Corporation);
COMCAST CORPORATION; COX MEDIA GROUP, LLC (sued
incorrectly as Cox Media Group, Inc.); DISH NETWORK L.L.C. (sued
incorrectly as Dish Network, LLC); RCN TELECOM SERVICES, LLC
(sued incorrectly as RCN Corporation); VERIZON CORPORATE
SERVICES GROUP INC. (sued incorrectly as Verizon Communications,
Inc.); UP ENTERTAINMENT, LLC; TRIBUNE BROADCASTING
COMPANY, LLC; CHARTER COMMUNICATIONS, INC.; BRIGHT
HOUSE NETWORKS, LLC; RAYCOM MEDIA, INC.; AND FRONTIER
COMMUNICATIONS CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WE 3 KINGS, INC., | Case No. CV 14-08816-DSF (ASx) |
| Plaintiff, | Hon. Dale S. Fischer |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| THE STEVE HARVEY SHOW, *et al.*, | |
| Defendants. | *[Filed concurrently: Notice of Motion and Motion for Summary Judgment; Supporting Declarations; Separate Statement of Uncontroverted Facts and Conclusions of Law;[Proposed] Judgment]* |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

)  DATE:        June 26, 2017
)  TIME:        1:30 p.m.
)  CRTRM.:      7D – 1st Street Courthouse
)
)  Complaint filed: November 13, 2014
)  Pre-trial Conf.: September 11, 2017
)  Trial Date: October 10, 2017
)

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107

222309-10004

2

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

<u>**Page**</u>

I.  INTRODUCTION ..................................................................................... 1

II.  STATEMENT OF FACTS ....................................................................... 2

    A.  General Overview of Music Licensing for Television. ...................... 2

    B.  In 2012, W3K Granted Deep Dish a Gratis License for the
        Use of W3K's Music in the Program. .............................................. 3

    C.  From 2012 to 2014, Deep Dish and W3K Operated Under
        the Gratis License; W3K Renewed Deep Dish's Online
        Access to W3K's Portal; and W3K Received Cue Sheets
        and Royalties. ................................................................................... 4

    D.  Two Years After Agreeing to a License and Seeing its
        Work Being Used, and Then Collecting Royalties, W3K
        Filed its Complaint. .......................................................................... 7

III.  ARGUMENT ......................................................................................... 9

    A.  Legal Standard for Summary Judgment of Copyright
        Infringement Claims. ........................................................................ 9

    B.  W3K Cannot Assert Claims for Works Registered After
        the Commencement of this Action. ................................................... 9

    C.  W3K's Claims are Based on Improper and Invalid "Bulk"
        Registrations, Precluding a Claim for Copyright
        Infringement. .................................................................................. 10

    D.  W3K Has Not Provided a "Chain of Title" for the Works
        and Therefore Cannot Establish Ownership. .................................. 11

    E.  W3K's Complaint for Copyright Infringement Should Be
        Dismissed Because W3K Granted a License to Deep Dish. ............ 13

        1.  W3K's Express License Granted Deep Dish the
            Right to Synchronize W3K's Music in the Program. ............... 13

            a.  The License Permits Free Use for the 202
                Episodes in Season 1 and $250 Per Episode
                Thereafter. ....................................................................... 13

            b.  Extrinsic Evidence, if Considered, Shows that
                the Parties Intended a Free License for the
                Entire First Season, with a $250 Fee for Later
                Uses. ............................................................................... 15

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

i

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS (CONT'D)

**Page**

    2.    Volpone Had Actual and Apparent Authority to Enter into the License with Deep Dish. ..................................... 16

    3.    W3K's Purported Rescission of the License Cannot Retroactively Turn Licensed Uses Into "Infringements." ........................................................................ 18

        a.    W3K Waived Any Right to Rescind the License. ......................................................................... 18

        b.    A Rescinded Copyright License Could Only Result in Infringement Claims for Post-Rescission Uses, and There are None. .......................... 19

        c.    W3K Has Not Complied with California's Requirements for Rescission. ......................................... 20

    4.    Even if the Express License is Limited to Season 1, W3K's Acts Constitute an Implied License for Later Seasons ........................................................................... 21

F.    None of the Broadcast, Cable or Satellite Company Defendants Committed Infringement. ................................................. 23

G.    W3K's Contributory and Vicarious Infringement Claims Fail as a Matter of Law Because There Are No Direct Infringements. ......................................................................... 24

H.    W3K Is Not Entitled to Statutory Damages or Attorneys' Fees. ......................................................................... 25

IV.    CONCLUSION ....................................................................... 25

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Actuate Corp. v. Fid. Nat'l Info. Servs.*,
5
    No. C 14-02274 RS, 2014 U.S. Dist. LEXIS 117513
    (N.D. Cal. Aug. 21, 2014) ................................................................. 14
6

7
*BMI v. CBS, Inc.*,
    441 U.S. 1 (1979) ............................................................................... 3
8

*BroadVision, Inc. v. Med. Protective Co.*,
9
    No. 08 Civ. 1478 (WHP), 2010 U.S. Dist. LEXIS 131106
    (S.D.N.Y. Nov. 23, 2010) ................................................................. 15
10

11
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................... 9
12

13
*Cosmetic Ideas, Inc. v. IAC/InteractiveCorp.*,
    606 F.3d 612 (9th Cir. 2010) ............................................................. 9
14

15
*County of Alameda v. S. Pac. Co.*,
    55 Cal. 2d 479 (1961) ...................................................................... 14
16

17
*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) ........................................................... 25
18

19
*Determined Prods., Inc. v. Koster*,
    No. C 92-1697 BAC, 1993 U.S. Dist. LEXIS 4586
20
    (N.D. Cal. Apr. 12, 1993) ................................................................ 10

21
*Effects Assocs. v. Cohen*,
    908 F.2d 555 (9th Cir. 1990) ........................................................... 21
22

23
*Englert v. IVAC Corp.*,
    92 Cal. App. 3d 178 (1979) ............................................................. 17
24

25
*Falcon Enters. v. Publrs. Serv.*,
    438 F. App'x 579 (9th Cir. 2011) .................................................... 22
26

27
*Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*,
    896 F. Supp. 2d 223 (S.D.N.Y. 2012) ............................................. 10

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

iii

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES (CONT'D)

2

**Page(s)**

3

*Field v. Google Inc.*,
4
    412 F. Supp. 2d 1106 (D. Nev. 2006) ..................................................22

5

*Fosson v. Palace, Ltd.*,
    78 F.3d 1448 (9th Cir. 1996) ..............................................................19
6

7

*Friends & Lovers, Inc. v. Lions Gate Films, Inc.*,
    56 F. App'x 760 (9th Cir. 2001).....................................................19, 20
8

9

*Graham v. James*,
    144 F.3d 229 (2d Cir. 1998) ...............................................................15

10

11

*Hailey v. Cal. Physicians' Serv.*,
    158 Cal. App. 4th 452 (2007) .............................................................19

12

13

*Hervey v. Mercury Cas. Co.*,
    185 Cal. App. 4th 954 (2010) .............................................................14

14

15

*I.A.E., Inc. v. Shaver*,
    74 F.3d 768 (7th Cir. 1996) ................................................................21

16

*J & J Sports Prods., Inc. v. Dailey*,
17
    No. C 10-05510 SI, 2011 U.S. Dist. LEXIS 85980
    (N.D. Cal. Aug. 4, 2011) ....................................................................10
18

19

*J.L. v. Children's Institute, Inc.*,
    177 Cal. App. 4th 388 (2009)..............................................................17

20

21

*Kim Seng Co. v. J&A Imps., Inc.*,
    810 F. Supp. 2d 1046 (C.D. Cal. 2011)...............................................12

22

23

*L.A. Printex Indus. v. Aeropostale, Inc.*,
    No. 10-56187, 2012 U.S. App. LEXIS 12033
    (9th Cir. June 13, 2012) ........................................................................9
24

25

*Lafarga v. Lowrider Arte Magazine*,
    No. SACV11-1501 DOC, 2012 U.S. Dist. LEXIS 120907
26
    (C.D. Cal. Aug. 24, 2012) ...................................................................10

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

iv

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1

<u>**TABLE OF AUTHORITIES (CONT'D)**</u>

2

<u>**Page(s)**</u>

3
4

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   Nos. 09-15932, 09-16044, 2011 U.S. App. LEXIS 3428
   (9th Cir. Feb. 17, 2011) .....................................................................................24

5
6

*Moore v. Phillips*,
   176 Cal. App. 2d 702 (1959) ............................................................................17

7
8

*Morales v. TWA*,
   504 U.S. 374 (1992) ..........................................................................................19

9
10

*Nat'l Cable TV Ass'n v. BMI*,
   772 F. Supp. 614 (D.C. Cir. 1991) .....................................................................2

11
12
13

*Nat'l Farm Fin. Corp. v. PSM Holding Corp.*
   *(In re Nat'l Farm Fin. Corp.)*,
   No. 07-31580 TEC, Chapter 11, Adv. Proc. No. 07-3134 TC,
   2008 Bankr. LEXIS 177 at *7 (Bankr. N.D. Cal. Jan. 18, 2008).......................17

14
15

*Principal Mut. Life Ins. Co. v. Vars*,
   65 Cal. App. 4th 1469 (1998) ...........................................................................14

16
17
18

*Quest Software, Inc. v. DirecTV Operations, L.L.C.*,
   No. SACV 09-1232 AG (ANx), 2011 U.S. Dist. LEXIS 110888,
   at *10-11 (C.D. Cal. Sept. 26, 2011) .................................................................15

19

*Rano v. Sipa Press, Inc.*,
   987 F.2d 580 (9th Cir. 1993) ............................................................................19

20
21

*Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*,
   733 F.3d 1251 (9th Cir. 2013) ............................................................................9

22
23

*Sound/City Recording Corp. v. Solberg*,
   443 F. Supp. 1374 (W.D. La. 1978) .................................................................21

24
25

*Stevens v. Corelogic, Inc.*,
   194 F. Supp. 3d 1046, 1053 (S.D. Cal. 2016) ..................................................22

26
27

*Sun Microsystems, Inc. v. Microsoft Corp.*,
   188 F.3d 1115 (9th Cir. 1999) ....................................................................13, 14

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

v

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Swanigan v. Young*,
   No. 1:15-CV-1272, 2016 U.S. Dist. LEXIS 165591
   (N.D.N.Y. Nov. 30, 2016) ................................................................................. 10

*Yount v. Acuff Rose-Opryland*,
   103 F.3d 830 (9th Cir. 1996) ............................................................................ 20

**Statutes**

17 U.S.C. § 101 ............................................................................................ 11, 22

17 U.S.C. § 106 .................................................................................................... 2

17 U.S.C. § 111 ............................................................................................ 23, 24

17 U.S.C. § 119 .................................................................................................. 24

17 U.S.C. § 122 .................................................................................................. 24

17 U.S.C. § 201 .................................................................................................. 11

17 U.S.C. § 204 ............................................................................................ 12, 22

17 U.S.C. § 208 .................................................................................................. 17

17 U.S.C. § 408 .................................................................................................. 11

17 U.S.C. § 411 ......................................................................................... 1, 9, 10

17 U.S.C. § 412 .................................................................................................. 25

17 U.S.C. § 501 .................................................................................................... 9

17 U.S.C. § 504 .................................................................................................... 2

Cal. Civ. Code § 1638 ....................................................................................... 14

Cal. Civ. Code § 1639 ....................................................................................... 14

Cal. Civ. Code § 1689 ....................................................................................... 21

Cal. Civ. Code § 1691 ....................................................................................... 21

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

2

<u>**Page(s)**</u>

3    Cal. Civ. Code § 2317.............................................................................................17

4    Cal. Corp. Code § 208 ..........................................................................................17

5    **Other Authorities**

6

7    37 C.F.R. § 202.3 ...........................................................................................10, 11

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

vii

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff We 3 Kings, Inc. ("W3K") purports to own a library of music cues that it licenses for use on television.  A music cue, as distinguished from a theme song or featured performance, is typically a short piece of music used as background to a visual event on screen, such as a guest arriving on stage, or played softly behind some other on-screen activity.  In this action, W3K alleges that Defendants infringed W3K's copyrights in an unspecified number of music cues in connection with *Steve Harvey*, a daytime talk-show hosted by the entertainer Steve Harvey (the "Program").  Defendants include Steve Harvey, the executive producers of the Program, the production companies that produced the Program, the Program's distributor (NBCUniversal), and numerous entities that broadcast or were merely passive carriers of the Program, such as Comcast, AT&T, and Verizon.

For ***each work*** that W3K alleges was infringed, W3K must (1) identify the work; and prove that (2) it owns the copyright in the work (by authenticating documents reflecting its chain of title), (3) it has a valid copyright registration certificate that was submitted to the Copyright Office for registration prior to commencement of this action as required by Section 411(a) of the Copyright Act, (4) it is an original work of authorship, (5) the work was the same work that was used in the Program, and (6) each Defendant took actions constituting copyright infringement as to each work.

Even assuming W3K can establish a *prima facie* case of ownership, its claims must fail because it is undisputed that W3K licensed its music library for use on *Steve Harvey*.  Specifically, W3K granted an express, written gratis license for the use of its entire music library for all 202 episodes of Season 1 of the Program,[1] with

---

[1] It is not uncommon for music cue libraries to be licensed on a *gratis* basis or for a minimal fee and for the owner instead to rely upon receiving more substantial fees for the public performance of such works through its performing rights organization (an entity that administers the performance rights in musical compositions).  Here, W3K received royalties for the public performance of its cues through SESAC, its chosen performing rights organization.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

1

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

a license fee of $250 for any additional episodes.  Although W3K claims that the license is "bogus," it provided Defendant Deep Dish (the producer of the Program) with the usernames and passwords necessary to access and use the library.

The vast majority of Defendants are broadcasters, cable companies or satellite companies that publicly performed the Program.  These Defendants did so pursuant to valid and subsisting licenses from SESAC, W3K's performing rights society, or statutory licenses pursuant to the Copyright Act.

Even if W3K were able to establish any Defendant's liability, it still would bear the burden of proof to establish its damages.  In a copyright infringement action, a plaintiff may elect either (1) statutory damages, or (2) actual damages and any profits of the Defendants attributable to the infringement.  17 U.S.C. § 504.

However, W3K is not entitled to statutory damages because it did not register copyrights in any of its works prior to the commencement of the alleged infringement.  And W3K can neither prove that it incurred any actual damages (other than, perhaps, a reasonable license fee) nor establish that any of Defendants' profits were attributable to the alleged infringement of W3K's music cues.  As such, the most it could be awarded is a reasonable license fee for the use of its music cues in certain episodes from Seasons 2 and 3 of the Program, which W3K has already acknowledged was $250 an episode.  *See* Section III.E.1.a, *infra*.

## II.    STATEMENT OF FACTS

### A.    General Overview of Music Licensing for Television.

The use of music on television requires two separate rights.  First, a producer needs a license for the right to record (or "synchronize") the music into a television program.  17 U.S.C. § 106(1); *see generally Nat'l Cable TV Ass'n v. BMI*, 772 F. Supp. 614, 619-20 (D.C. Cir. 1991) ("synchronization rights [are] the right to record or synchronize music with the visual image").  Second, a broadcaster must obtain a license to publicly perform the musical work.  17 U.S.C. § 106(4).

Copyright owners typically grant synchronization licenses directly, often on a

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

gratis basis or for a nominal fee because the copyright owner expects to receive public performance royalties from the performing rights organizations ("PROs"), who grant blanket licenses for their repertoire to broadcasters and others engaging in the public performance of music.  [UF[2] 1]  *See generally BMI v. CBS, Inc.*, 441 U.S. 1, 5-6 and 20-21 (1979).

PROs determine that usage by reviewing "cue sheets," which they receive from production companies who identify the music used in their programs and pay royalties to music owners and composers.  [UF 2-3]

### B.    In 2012, W3K Granted Deep Dish a Gratis License for the Use of W3K's Music in the Program.

In July 2012, the producers[3] of the Program engaged W3K to compose its theme song.  [UF 10]  Negotiations between Deep Dish (through Jonna Walsh, its Executive in Charge of Production) and W3K (through Keith Volpone a/k/a Seven Williams, its President) continued through the summer of 2012.  [UF 11-16]

At this time, W3K pitched Deep Dish to use W3K's music library in the Program.  [UF 17]  A music library is a collection of mostly instrumental, general-use music, designed for synchronization as background music for a variety of audio-visual programs.  [UF 18]  For example, the music that plays when guests walk on stage for a talk show, or leading into and out of commercial breaks, could be part of a music library.  [UF 19]

On July 26, 2012, Volpone emailed Walsh, offering unlimited use of W3K's music library in the Program for $300 per episode.  [UF 20]  Volpone told his co-founders, Bill Brandt (W3K's Vice-President) and Walter Brandt (W3K's

---

[2] References to "[UF __]" are to the numbered items in the concurrently filed Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law.
[3] After Defendant Endemol USA Holdings, Inc. ("Endemol"), a developer and producer of television programs, produced the pilot episode of *Steve Harvey*, Defendant Deep Dish Productions of Chicago, LLC ("Deep Dish") took over production of the Program.  The individual defendants Alex Duda, Rushion McDonald, and Steve Harvey, as well as Beautiful Day Productions, LLC, are also producers of the Program.  [UF 4-9]

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

3

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Secretary[4]), about the offer.  [UF 21-23]  On July 31, 2012, Volpone and Joe Brandt
(W3K's "IT guy" and manager of W3K's "music portal," i.e., Internet library) each
separately emailed Walsh with login credentials to access W3K's music library
online.  [UF 24-26]

On August 1, 2017, Walsh told Volpone that Deep Dish had acquired a free
(gratis) music library to use, and it "d[id]n't make sense to add another library."
[UF 27]  In reaction to this news, Volpone emailed the Brandts suggesting that W3K
offer its library for free as well.  [UF 28]

Bill Brandt agreed that W3K should offer a gratis license for the first season
of the Program.  [UF 29]  Accordingly, on August 6, 2012, Volpone emailed Walsh,
and agreed to a free license for Season 1:

> **I have discussed at length with my partners** the Library
> situation and your budget issues…and we have decided that
> it[']s better to have the library in the 180 eps show than
> not…so if it[']s okay we will give it to you for free so that
> we do not lose out on the back end…

(emphasis added).  [UF 30-31]

Walsh accepted the offer and asked Volpone to draft the license.  [UF 32-33]

**C.    From 2012 to 2014, Deep Dish and W3K Operated Under the
Gratis License; W3K Renewed Deep Dish's Online Access to
W3K's Portal; and W3K Received Cue Sheets and Royalties.**

Five days later, Joe Brandt reported to W3K that Walsh had downloaded
music from their online library, and "hopefully, they will still be using a bunch of
our library music," to which Walter Brandt replied "[t]hat's great!"  [UF 34-35]

On August 13, 2012, Bill Brandt received Volpone's draft license agreement.
[UF 36]  The parties continued to negotiate the final language for the agreement.[5]

---

[4] Walter Brandt is not involved in the business aspects of W3K.  [UF 62-65]
[5] In discovery, W3K produced an August 27, 2012 email in which Bill Brandt
told Volpone that Volpone had been removed as president of W3K after twelve
years and a "resolution" confirming his removal.  [UF 37-38].  This email was never
sent to Deep Dish, and Deep Dish was not otherwise informed of this purported

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

4

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

The Program went on the air on September 4, 2012.  [UF 42]  On September 23, 2012, W3K learned that although its theme song and library music ("cues" and "stings") were used in the Program, W3K was not listed in the Program's credits.  [UF 43-45]  Volpone contacted Deep Dish to address this issue on W3K's behalf, without objection from W3K.  [UF 46-47]

On September 26, 2012, Walsh emailed Volpone to revise the library agreement because the first season was expected to have 202 episodes, not 180, and Deep Dish wanted the free license to cover the entire first season.  [UF 48]  Volpone agreed to the revision.  [UF 49]

The next day, Walsh requested that the license provide for uses beyond the first season: "[l]egal wants to include a rate for anything above the 202 for year 1" and asked if $250 per additional episode was agreeable for uses beyond Season 1, to which Volpone again agreed.  [UF 50-51]

A few weeks later, Volpone delivered the executed "Music Library License Agreement" (the "License"), providing for free use of W3K's library for Season 1 (encompassing 202 episodes), and a fee of $250 per episode for uses thereafter.  [UF 52]  The License is not limited to Season 1—and explicitly provides for subsequent uses:

> **1. Grant of Rights.**  In consideration of Licensee's payment in full to Licensor in accordance with Subparagraph 1.1 below, Licensor hereby grants to Licensee the perpetual, non-revocable, non-exclusive right and license to broadcast, synchronize, telecast, and otherwise use the Library solely and in connection with all of the two hundred and two (202) episodes of the First season of TSHS and in connection with any advertising, publicity and promotion of TSHS. . … In the event Licensee wishes to use any of the Recordings and/or Cues from the Library in any episodes of TSHS beyond the two hundred and two (202) episodes of the Season One (1) Production contemplated herein, the parties

change until 2014.  [UF 39-41]  Nonetheless, Volpone continued to correspond with Deep Dish on behalf of W3K, as Bill Brandt acknowledged.  [UF 41, 323, 325]

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

agree to a license fee of two hundred and fifty dollars ($250.00) per episode any additional episodes above 202.

[UF 53-54]

The License, drafted by Volpone, specifically waived W3K's right to "injunctive or other equitable relief" in the event of a breach, provided for Deep Dish's distribution rights, and included an integration clause. [UF 55-57]

On January 29, 2013, Bill Brandt emailed Deep Dish to obtain the Program's cue sheets. [UF 58] He reviewed the cue sheets with Walter Brandt and Volpone to ensure that the information was correct. [UF 59-61] The cue sheets identified numerous works from W3K's music library, which are the subject of W3K's claims in this litigation. [UF 66-111] But W3K did not object to the uses as being unlicensed. [UF 112]

In fact, on January 17, 2014 (midway through Season 2), W3K's Facebook page prominently posted a photograph of Steve Harvey, and bragged that "[t]he show features original music, including the theme song, by" W3K. [UF 113]

On January 23 and 24, 2014, Bill Brandt emailed Walsh, asking if she had any music needs for the Program. [UF 114-115] On January 25, Walsh replied that Deep Dish was "all set" regarding music. [UF 116] Later that day, Joe Brandt emailed Walsh *a renewed password to access W3K's music library*. [UF 117]

On January 28, 2014, Bill Brandt finally informed Walsh that he would be the contact person for W3K going forward, and that Volpone "was a middleman between your company and ours" and was "a shareholder in We3Kings only." [UF 118] Brandt reiterated that W3K "will happily fulfill any and all of your musical needs as we have always done in the past." [UF 118] No mention was made of any unpermitted use of W3K's music. [UF 119]

Every use of W3K's music in the Program, including those in the cue sheets delivered to Bill Brandt on January 30, 2013, was reported to W3K in their SESAC royalty statements (based on Defendants' cue sheets), with distributions starting in

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

mid-2013, a year and a half before W3K filed its complaint.[6]  [UF 120-126]

These royalty distributions were made pursuant to W3K's agreements with SESAC, in which it granted SESAC the right to enter into performing rights licensing agreements on W3K's behalf, and collect and distribute royalties for public performances of its music.  [UF 127-129]

Accordingly, each Defendant who publicly performed episodes of *Steve Harvey* that included W3K's music on television[7] did so pursuant to licenses with BMI, ASCAP, and SESAC, which permitted them to publicly perform the works of the PROs' respective affiliates, including W3K.  [UF 130-140; 298-308]  Similarly, each Defendant who publicly performed the relevant episodes via cable or satellite[8] did so pursuant to statutory licenses under the Copyright Act.  [UF 141-150; 309-318]  None of these Defendants had any involvement in the decisions regarding the production or distribution of the Program.  [UF 151-192; *see also* UF 329]

As for NBCUniversal's[9] distribution of the Program, the License permitted Deep Dish to "freely assign all rights in and to [the Program] to any … distributor or subdistributor."  [UF 56]  NBCUniversal obtained the right to distribute the Program pursuant to its syndication license agreement with Endemol, the assignee of those rights from Deep Dish.  [UF 193]

### D.    Two Years After Agreeing to a License and Seeing its Work Being Used, and Then Collecting Royalties, W3K Filed its Complaint.

On November 13, 2014, W3K filed a complaint for copyright infringement

---

[6] These royalty statements list the SESAC affiliate (i.e., member) name as "WE3SONGS," rather than "We 3 Kings, Inc."  [UF 127]  Despite testimony that these are the same entity, there is no documentary evidence of the corporate relationship between WE3SONGS and Plaintiff. [UF 128]

[7] Defendants Tegna Inc.; Hearst Television Inc.; Media General, Inc.; LIN Television Corporation; Local TV, LLC; Nexstar Broadcast Group, Inc.; Sinclair Broadcast Group, Inc.; Cox Media Group, LLC; Tribune Broadcasting Company, LLC; UP Entertainment, LLC; and Raycom Media, Inc..

[8] Defendants Time Warner Cable, Inc.; DIRECTV, LLC; AT&T Services, Inc.; Comcast Corporation; Dish Network L.L.C.; RCN Telecom Services, LLC; Verizon Corporate Services Group, Inc.; Charter Communications, Inc.; Bright House Networks, LLC; and Frontier Communications Corporation.

[9] Defendant NBCUniversal Media, LLC.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

seeking more than $42 million in damages.  [UF 125, 194]

W3K filed its first amended complaint (the "FAC") on October 9, 2015. [UF 195]  The FAC alleged that the Season 1 uses were unlicensed, and that the downloads from W3K's online portal were also infringements even if never used in the Program.  [UF 196]  On October 5, 2015, W3K sent a letter to Deep Dish and counsel for Defendants, claiming to rescind the License.  [UF 197-198]

During discovery, W3K revealed that their claims pertain to twelve copyright registrations, but only one (PAu 3-752-503) was submitted to the Copyright Office (on October 29, 2014) prior to the filing of the complaint (on November 13, 2014). [UF 125, 199-200]  The remaining registrations were submitted long after this action was filed.  [UF 125, 201-211]  And none of the works was registered prior to its synchronization in any episode of *Steve Harvey*.  [UF 199-213[10]]

Each of the twelve registrations are of "collections" (multiple works within a single registration).  [UF 218-229]  However, only one of the registrations (PAu 3-752-503) actually identifies the works by title.  [UF 282]

Every single one of these collections contains works by different authors, [UF 242-281, 332-347], despite every registration listing "We3Kings" as the author, [UF 230-241].  And, although every registration states that it is a "[w]ork made for hire," [UF 286-297], W3K has not produced any documents identifying any author as preparing works as an employee, [UF 284, 319].  Indeed, Bill Brandt admitted that W3K's library includes works not owned by W3K.  [UF 285]

PAu 3-752-503, the only registration that pre-dates the complaint, covers 106 musical compositions and no sound recordings.  [UF 214]  No single author contributed to each and every work on that registration.  [UF 283][11]

---

[10] Specifically, PAu 3-752-503 bears an effective date of October 29, 2014, and the last episode to use a work from that registration originally aired on October 13, 2014.  The remaining registrations bear effective dates in September and October 2015, and the last episode to use a work from any of those registrations originally aired on November 18, 2014, nearly a year prior.  [UF 199-213]

[11] Works from this registration were used in 139 episodes of the Program: 54 in Season 1, 78 in Season 2, and 7 in Season 3.  [UF 215-217]

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## III.    ARGUMENT

### A.    Legal Standard for Summary Judgment of Copyright Infringement Claims.

Where no genuine issue of material fact exists as to any element of a claim, summary judgment is appropriate and the moving party is entitled to judgment as a matter of law.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Copyright infringement has two elements: (1) ownership of a valid copyright, and (2) copying (without permission) of constituent elements of the work that are original.  *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) ((quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); 17 U.S.C. § 501.

Here, Defendants are entitled to judgment as a matter of law because W3K cannot establish ownership, and cannot establish copying without permission.

### B.    W3K Cannot Assert Claims for Works Registered After the Commencement of this Action.

The Copyright Act provides:  "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a).  In other words, "[c]opyright registration is a precondition to filing a copyright infringement action."  *L.A. Printex Indus. v. Aeropostale, Inc.*, No. 10-56187, 2012 U.S. App. LEXIS 12033, at *25 (9th Cir. June 13, 2012).[12]

Here, only one of W3K's twelve registrations, PAu 3-752-503, satisfies this requirement.  [UF 125, 200]  W3K did not submit a copyright registration application for any other work in its music library until long after November 13,

---

[12] *See also Cosmetic Ideas, Inc. v. IAC/InteractiveCorp.*, 606 F.3d 612, 619 (9th Cir. 2010) ("[R]egistration is required for U.S. works prior to bringing any infringement action. … Indeed, … copyright holders frequently register specifically for the purpose of being able to bring suit.").  In the Ninth Circuit, this precondition is satisfied when the Copyright Office receives a complete copyright registration application.  *See Cosmetic Ideas, Inc.*, 606 F.3d at 621 ("receipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2014, the date of W3K's complaint.  [UF 125, 199, 201-211]

Because W3K's post-complaint copyright registration applications were not submitted to the Copyright Office until after W3K commenced this action, W3K is barred from pursuing any infringement claims for any works contained in those later applications.  *See Lafarga v. Lowrider Arte Magazine*, No. SACV11-1501 DOC (MLGx), 2012 U.S. Dist. LEXIS 120907, at *12-13 (C.D. Cal. Aug. 24, 2012) (ordering plaintiff to show cause why the Court should not dismiss copyright infringement claim where plaintiff failed to allege the works were registered prior to filing action, observing: "District courts have held that registration is a *mandatory* precondition to suit and have therefore dismissed copyright infringement claims involving unregistered works *sua sponte*") (emphasis in original).[13]

Consequently, W3K's claims—if any survive—are limited to the 106 musical compositions contained in PAu 3-752-503, and claims pertaining to works on the other eleven registrations should be dismissed as a matter of law.

### C.    W3K's Claims are Based on Improper and Invalid "Bulk" Registrations, Precluding a Claim for Copyright Infringement.

W3K's claims are also barred because it improperly registered the works as "collections."  Valid registration is a prerequisite to copyright infringement claims. *See Determined Prods., Inc. v. Koster,* No. C 92-1697 BAC, 1993 U.S. Dist. LEXIS 4586, at *2 (N.D. Cal. Apr. 12, 1993) (violation of 37 C.F.R. § 202.3 "is a fundamental registration error, which deprives this court of jurisdiction over the copyright claim"); *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 229-30 (S.D.N.Y. 2012) (registration of a "collection" that violates 37 C.F.R. § 202.3 is invalid).  But 17 U.S.C. § 408(c) and 37 C.F.R. § 202.3 preclude

---

[13] *See also J & J Sports Prods., Inc. v. Dailey*, No. C 10-05510 SI, 2011 U.S. Dist. LEXIS 85980, at *4-5 (N.D. Cal. Aug. 4, 2011) (dismissing copyright infringement claim for failure to comply with section 411(a)'s registration requirement); *Swanigan v. Young*, No. 1:15-CV-1272, 2016 U.S. Dist. LEXIS 165591, at *11-12 (N.D.N.Y. Nov. 30, 2016) (taking judicial notice that copyrighted work was registered after action was commenced and granting defendant's motion to dismiss *pro se* plaintiff's copyright infringement claim with prejudice).

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

10

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

registration of works as collections unless the works all have the same author. Specifically, 37 C.F.R. § 202.3(b)(4)(B)(4) requires that "[a]ll of the elements [of the collection] are by the same author, or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element."

Here, W3K alleges infringement of twelve registrations, each of which is a "collection." [UF 218-229] However, these collections contain works by different authors, though W3K misrepresents itself as author as a "[w]ork made for hire." [UF 230-281, 286-297, 332-347] But W3K has not produced any documents confirming its employment relationship with any of the songwriters. [UF 284, 319]

Moreover, for PAu 3-752-503 (the only registration that pre-dates the complaint), no single author contributed to each and every work on that registration. [UF 283] In fact, 23 of the 106 songs in PAu 3-752-503 were not authored by either Volpone or the Brandts. [UF 320]

Because each registration that W3K claims is at issue in this case is an invalid "collection" registration, the complaint should be dismissed.

**D.    W3K Has Not Provided a "Chain of Title" for the Works and Therefore Cannot Establish Ownership.**

Before a plaintiff can address unauthorized copying, it must prove copyright ownership, which "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). W3K registered the works in its library as works made for hire. [UF 286-297] A "work made for hire" is defined in 17 U.S.C. § 101 as:

> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

11

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

But a musical composition does not fit into any of the commissioned work categories of subsection (2), and W3K can only claim work-for-hire status (and establish ownership) if all of the writers were its employees.

Absent proof of ownership (or a valid registration for that matter), W3K has no standing to sue for copyright infringement.  And, of course, W3K has failed to produce a chain of title through written transfers, even if it was not claiming ownership as a work for hire.  *See* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."); *Kim Seng Co. v. J&A Imps., Inc.*, 810 F. Supp. 2d 1046, 1055-57 (C.D. Cal. 2011) (granting summary judgment where plaintiff failed to show copyright assignment).

W3K has admitted, and the evidence confirms, that the authors (i) were not W3K's employees and (ii) retained ownership of their works.  [UF 285, 321, 348][14] In addition to Volpone and the Brandts, there are numerous other songwriters whose existence is unexplained.  [*See, e.g.,* UF 242-281, 320].  And although the registration certificates represent that the musical works contained therein (largely unidentified by title) are works made for hire, W3K has not produced a single document identifying the songwriters as employees of W3K (e.g., W-2 tax forms), or the status of these songwriters as commissioned employees.  [UF 282-284, 286-297, 319]  Moreover, Bill Brandt admitted that W3K's library includes works not owned by W3K, [UF 285], which therefore cannot be deemed works made for hire.

To give one example, registration PAu 3-752-503 is a collection registration that contains a song titled "Fold Full" composed by Jay Lazaroff and Craig Owens,

---

[14] W3K produced five license agreements with third-parties, but other than these five entities, W3K has not identified or produced any documents transferring rights to W3K.  And even those agreements cover already-existing works—there is no mention of the authors' employment status or that the works were intended to be included in a compilation with the works of other authors.  [UF 321]  In other words, these agreements do not establish that any works were works-for-hire.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

12

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

and a song titled "Cuban Cigar" composed by a different author, Marvin Andrew Paige.  [UF 242-245; *see also* UF 320]  Because W3K has not produced any documents establishing the transfer of copyright ownership of either work from its author to W3K, [UF 284], W3K's copyright claims fail as a matter of law.

> **E.    W3K's Complaint for Copyright Infringement Should Be Dismissed Because W3K Granted a License to Deep Dish.**

It is axiomatic that "a 'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement' and can sue only for breach of contract."  *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999).  Here, because W3K granted Deep Dish a license to use W3K's music, the FAC fails as a matter of law.

> **1.    W3K's Express License Granted Deep Dish the Right to Synchronize W3K's Music in the Program.**

W3K characterizes the License as "bogus" or, at best, limited to Season 1 of the Program, but provides no support for its contention.  [UF 324]

> **a.    The License Permits Free Use for the 202 Episodes in Season 1 and $250 Per Episode Thereafter.**

The plain language of the License defines Season 1 as consisting of 202 episodes.  Consequently, the $250 per episode fee can only apply to any episodes <u>after</u> the 202 episodes of Season 1:

> **1. Grant of Rights**. … Licensor hereby grants to Licensee the … non-exclusive right and license to broadcast, synchronize, telecast, and otherwise use the Library solely and in connection with **all of *the* two hundred and two (202) episodes of the First season** TSHS … In the event Licensee wishes to use any of the Recordings and/or Cues from the Library in any episodes of TSHS beyond ***the* two hundred and two (202) episodes of *the* Season One (1) Production** contemplated herein, the parties agree to a license fee of two hundred and fifty dollars **($250.00) per episode any additional episodes above 202**.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(emphasis added).  [UF 53]

The Court may interpret the license as a matter of law, and dismiss the claims because the language is unambiguous.  *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 962 (2010).  The License is governed by California state law.  [UF 57][15] Under California law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit."  Cal. Civ. Code § 1638; *see also* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone …"); *Hervey*, 185 Cal. App. 4th at 961.

Moreover, "[w]here the parties have entered into written engagements which industriously express the obligations which each is to assume, the court should be reluctant to enlarge them by implication as to important matters."  *County of Alameda v. S. Pac. Co.*, 55 Cal. 2d 479, 488 (1961).  The Court may not "insert what has been omitted [and does] not have the power to create for the parties a contract which they did not make and cannot insert language which one party now wishes were there."  *Principal Mut. Life Ins. Co. v. Vars*, 65 Cal. App. 4th 1469, 1478 (1998).  In other words, the Court may not insert into the License a limitation that it only applies to Season 1 of *Steve Harvey*, or that the $250 fee applies only to episodes between 202 and the final episode of Season 1.

As such, W3K's claim against Deep Dish, if any, constitutes a state law breach of contract claim for payment of $250 per episode (beyond the first 202), because the alleged failure to pay the $250 fee does not constitute copyright infringement.  It is well-settled that a failure to remit payment for uses permitted by a license are breaches of covenants, while uses beyond the limits of a license may be deemed to be copyright infringement.  *See Actuate Corp. v. Fid. Nat'l Info. Servs.*, No. C 14-02274 RS, 2014 U.S. Dist. LEXIS 117513, at *6-7 (N.D. Cal. Aug. 21, 2014) ("courts in this circuit have recognized claims for copyright infringement

---

[15] *See also Sun Microsystems, Inc.*, 188 F.3d at 1122 ("we agreed that we should 'rely on state law to provide the canons of contractual construction'").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

14

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

where the licensee created or distributed copies in excess of explicit numeric conditions within the licensing agreement while rejecting such claims where the gravamen of the complaint was a failure to remit sufficient royalties") (granting motion to dismiss); *Quest Software, Inc. v. DirecTV Operations, L.L.C.*, No. SACV 09-1232 AG (ANx), 2011 U.S. Dist. LEXIS 110888, at *10-11 (C.D. Cal. Sept. 26, 2011) (where a license permitted use of copyright software on a certain number of computers and permitted additional uses for an additional fee, such provisions are covenants, and not conditions, and failure to pay "provides Plaintiff no grounds to claim that Defendant infringed its copyright").[16]

Here, the License specifically permits uses of W3K's library beyond episode 202, and any failure to pay W3K for these explicitly permitted uses constitutes a breach of the covenant to pay, rather than a breach of any condition of the License. Thus, the copyright infringement claim fails as a matter of law.

### b. Extrinsic Evidence, if Considered, Shows that the Parties Intended a Free License for the Entire First Season, with a $250 Fee for Later Uses.

Despite the clear language of the License, W3K urges the Court to accept an alternative interpretation of that clear language: that it applied only to Season 1. But Bill Brandt did not see the License, or negotiate with Deep Dish,[17] and in fact, Bill Brandt referred to Volpone as "the sole person dealing with Deep Dish at the time." [UF 322-323] Thus, he cannot now opine on the intent of Volpone, W3K's president, in drafting the License. And, in any case, the License contains an integration clause, precluding such considerations. [UF 57]

---

[16] *See also Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998) (concluding that where the copyright owner 'turn[ed] over the [copyrighted software] for [the licensee's] use before any royalties were paid,' the requirement of royalty payments was a contractual covenant, not a condition precedent); *BroadVision, Inc. v. Med. Protective Co.*, No. 08 Civ. 1478 (WHP), 2010 U.S. Dist. LEXIS 131106 (S.D.N.Y. Nov. 23, 2010) (dismissing copyright claim because a license provision that provided for additional fees for additional uses was a covenant).

[17] Walter Brandt had no involvement in the License either. [UF 62-64]

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

15

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

But setting all this aside, the intent of the parties is clear from their emails. When Volpone originally offered the gratis license, it was for "**the** 180 ep[isode]s" of Season 1. [UF 20]  While the License was being drafted, Walsh asked Volpone to revise the episode count because Season 1 was now expected to total 202 episodes, and Deep Dish wanted to have the entire Season 1 covered.  [UF 48-49]  And nothing in the parties' correspondence ever discussed limiting the uses to Season 1, or that uses were prohibited beyond Season 1.

### 2.     Volpone Had Actual and Apparent Authority to Enter into the License with Deep Dish.

Notwithstanding the physical evidence (confirmed by Bill Brandt's testimony), the FAC seeks to wish away the License as "bogus" ostensibly because it was not authorized by the "Plaintiff corporation" or executed by anyone with the authority to do so.  [UF 324]

But there is no genuine dispute that the License was negotiated, agreed to, and drafted by Volpone, W3K's president, [UF 15, 29-33, 48-52], and Volpone kept W3K's vice-president, Bill Brandt, advised of the negotiations, [UF 21, 23, 28, 36]. Indeed, Bill Brandt referred to Volpone as W3K's "middleman," [UF 118], and "the sole person dealing with Deep Dish at the time," referring to August 2012 when the License was negotiated, [UF 323].  In other words, Volpone represented W3K with respect to the *Steve Harvey* negotiations, and Bill Brandt knew that, at all times.

Under California law, Volpone's signature is binding on W3K and creates a contract enforceable against W3K by Deep Dish.  Cal. Corp. Code § 208(b) provides that: "[a]ny contract or conveyance made in the name of a corporation which is authorized or ratified by the board, or is done within the scope of the authority, actual or apparent, conferred by the board or within the agency power of the officer executing it … binds the corporation."  Section 208(a) states that no limitation, "contained in or implied by the articles [of incorporation] … or by any shareholders' agreement shall be asserted as between the corporation or any

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

shareholder and any third person."

California law dictates that a corporate officer (like Volpone) acting within the scope of his or her "actual or apparent" authority, "binds the corporation."  Cal. Corp. Code § 208; *Nat'l Farm Fin. Corp. v. PSM Holding Corp. (In re Nat'l Farm Fin. Corp.),* No. 07-31580 TEC, Chapter 11, Adv. Proc. No. 07-3134 TC, 2008 Bankr. LEXIS 177 at *7 (Bankr. N.D. Cal. Jan. 18, 2008) ("Section 208(b) of the Corporations Code suggests that lack of required shareholder approval does not relieve the corporation from monetary liability under a contract.").

Actual authority (actual agency) resides in employees of the principal, while apparent authority (ostensible agency) arises when a principal causes a third person to believe another to be his agent.  *J.L. v. Children's Institute, Inc.*, 177 Cal. App. 4th 388, 403 (2009) (citing Cal. Civ. Code §§ 2298, 2299).  Apparent authority has three elements: (i) The person dealing with an agent must do so with a reasonable belief in the agent's authority, (ii) such belief must be generated by some act or neglect by the principal sought to be charged and (iii) the person relying on the agent's apparent authority must not be negligent in holding that belief.  *Id.*; *see also* Cal. Civ. Code § 2317.

Here, Volpone, (i) the president of W3K[18] [UF 15]; (ii) W3K's "salesman" [UF 325]; (iii) having entered the License after consulting with Bill Brandt [UF 29]; (iv) having been W3K's "middleman" with Deep Dish [UF 118]; (v) the "sole person dealing with Deep Dish" on W3K's behalf [UF 323]; and (vi) having signed the License as W3K's "Co-Founder" [UF 326]; had actual authority to enter into the License and to bind W3K.  In light of all of these considerations, Volpone was

---

[18] In examining the actions of a corporate president, California courts have long held that, "where … the president of a company also conducts the business he has ostensible authority to do any act appropriate in the ordinary course of business." *Englert v. IVAC Corp.*, 92 Cal. App. 3d 178, 190 (1979).  Moreover, "in its ordinary course of business its president, as corporate representative, may execute contracts to bind the corporation." *Moore v. Phillips*, 176 Cal. App. 2d 702, 709 (1959) (citing to *Grummet v. Fresno Glazed Cement Pipe Co.*, 181 Cal. 509 (1919) and *Herring v. Fisher*, 110 Cal. App. 2d 322, 330 (1952)).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

clearly authorized to enter into the License on W3K's behalf, and it is irrelevant that he was removed as president.

But even if Volpone's ouster did deprive him of actual authority to sign the License, Deep Dish was not informed of the change until 2014, long after the License was executed. [UF 40-41] So Volpone had apparent authority to bind W3K to its terms: (i) Deep Dish had a reasonable belief that W3K's president had authority to enter into the License, especially considering that Volpone represented that he had consulted with his partners [UF 31]; (ii) W3K knew Volpone was negotiating the License and did not object [*see, e.g.,* UF 28-29, 34-36]; (iii) W3K did not object to Deep Dish's downloading of W3K's music (and in fact thought the downloads were "great!") [UF 34-35]; (iv) W3K did not object to Deep Dish's use of W3K's music when it received cue sheets (and royalty payments) reflecting such uses [UF 123]; and (iv) there is no evidence that Deep Dish was negligent in relying upon Volpone's authority.

### 3. W3K's Purported Rescission of the License Cannot Retroactively Turn Licensed Uses Into "Infringements."

On October 5, 2015, W3K sent a "notice of rescission" to Deep Dish, purporting to rescind the License "*ab initio*." [UF 198][19] By using the phrase "*ab initio*," W3K asserts that the heretofore licensed uses miraculously transformed into infringing uses.

### a. W3K Waived Any Right to Rescind the License.

As a threshold matter, Plaintiff's claim for rescission is barred by the License:

> No breach by [Defendants] of any provision hereof shall give [Plaintiff] the right to injunctive or other equitable relief … Licensor's sole remedy for any such breach shall be limited to an action at law to seek money damages, if any.

---

[19] As grounds for the purported rescission, Plaintiff claims that the License "is void for total failure of consideration." [UF 198]. This is incorrect, because consideration is "acknowledged as paid" in the License. [UF 54]

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

18

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

[UF 55]  Rescission is an equitable remedy.  *See, e.g., Hailey v. Cal. Physicians' Serv.,* 158 Cal. App. 4th 452, 468 (2007)  ("Rescission, however, is an equitable remedy…").  The License specifically states that W3K waived any injunctive or equitable relief, which includes its claim for rescission.  Thus, the parties' contractual provision renders any rescission claim a legal nullity since Plaintiff "had no right to rescind as a matter of law by virtue of [its] waiver."  *Fosson v. Palace, Ltd.*, 78 F.3d 1448, 1455 (9th Cir. 1996).

Further, the License provides a clear remedy for breach of its terms, [UF 55], and per the Supreme Court, "[i]t is a 'basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law….'" *Morales v. TWA*, 504 U.S. 374, 381 (1992); *see also Friends & Lovers, Inc. v. Lions Gate Films, Inc.*, 56 F. App'x 760, 760-61 (9th Cir. 2001) (affirming dismissal of copyright claims where rescission was impossible).

### b.     A Rescinded Copyright License Could Only Result in Infringement Claims for Post-Rescission Uses, and There are None.

Notwithstanding the fact that the written License waived W3K's right to rescind, W3K's after-the-fact attempt to rescind was ineffectual because, as a matter of Ninth Circuit law, "rescission … allows the nonbreaching party to terminate the agreement.  After the agreement is terminated, any **further distribution** would constitute copyright infringement." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993) (emphasis added) (citing *Costello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1045 (D.C. Cir. 1993) ("an action for copyright infringement would lie if the breach is so material that it allows the grantor power to recapture the rights granted so that any **further use** of the work was without authority") (emphasis added); *Fosson*, 78 F.3d at 1455 ("once a non-breaching party to an express copyright license obtains and exercises a right of rescission by virtue of a material breach of the agreement, any further distribution of the copyrighted material would constitute infringement").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

This is the only sensible result. Rescission seeks to restore the parties to their positions prior to the contract. *Friends & Lovers,* 56 F. App'x at 760. It would be impossible to return the parties to their pre-contract states because the episodes of the Program that allegedly used W3K's music have already been produced and aired. This is analogous to the distribution rights in *Friends & Lovers*, in which the Ninth Circuit held that rescission of the license was impossible because the motion picture at issue had already been released. *Id.* at 760-61. Thus, a rescission operates identically to a termination.

There were no downloads or synchronizations of W3K's works after October 5, 2015. [UF 120-123, 126, 327-328]  The last alleged download was in October 2014, a year before the rescission letter. [UF 327]  The latest episode of the Program that included W3K's music aired on November 18, 2014, also nearly a year before the rescission letter. [UF 213]  Accordingly, even if the rescission were effective—as a termination—for uses after October 5, 2015, there are none.

### c.    W3K Has Not Complied with California's Requirements for Rescission.

Even if the Court were to ignore the License's contractual preclusion of any equitable relief or that W3K has not identified a single post-rescission use, W3K's rescission claim still fails as a matter of law. The California Civil Code[20] states that: "[a] party to a contract may rescind the contract … [i]f the consideration for the obligation of the rescinding party fails." Cal. Civ. Code § 1689(b)(2). However, in order to exercise this right, the rescinding party must, "**promptly** upon discovering the facts which entitle him to rescind … [g]ive notice of rescission [and **r]estore the other party everything of value** which he has received from him under the contract." Cal. Civ. Code § 1691 (emphasis added).

---

[20] In deciding an action for rescission, federal courts apply the relevant state standard. *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 834 (9th Cir. 1996) ("an egregious breach of the contract transferring a copyright may well give a royalty holder a right of rescission. But rescission itself is a creature of state law.") (internal citation omitted).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

But W3K did not give prompt notice or restore the value received.  The notice of rescission is dated October 5, 2015, [UF 197-198], more than three years after the Program started airing (with W3K's music) in September 2012, [UF 42], nearly three years after Bill Brandt reviewed cue sheets showing W3K's music and discussed those cue sheets with his partners, [UF 58-61], and nearly a year after W3K filed its complaint, [UF 125].  This delay dooms the purported rescission because it caused immense prejudice to Defendants, who acted pursuant to, and relied upon, the License for years before being notified of any dispute.  *Sound/City Recording Corp. v. Solberg,* 443 F. Supp. 1374, 1378-79 (W.D. La. 1978) (citing Cal. Civ. Code § 1693) ("When relief based upon rescission is claimed in an action or proceeding, such relief shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party.").

Moreover, there is no evidence that W3K returned the consideration for the License recited in section 1.1, or any of the payments from the PROs that resulted from performance of its works on the Program, or discontinued its significant reference to *Steve Harvey* on its website.  [UF 113]

Ultimately, W3K presumes that it can retain the benefits (financial, promotional, and otherwise) of having its works included in a nationally syndicated television show, while at the same time claiming millions of dollars in damages for their use.  Such a result is contrary to the equitable standards outlined by the California legislature, and should be rejected.

### 4.    Even if the Express License is Limited to Season 1, W3K's Acts Constitute an Implied License for Later Seasons.

The transfer of nonexclusive rights to copyrighted works does not require a signed writing, (*Effects Assocs. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990) (discussing 17 U.S.C. §§ 101, 204)), and courts "universally have recognized that a nonexclusive license may be implied from conduct," (*I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996)).  The Ninth Circuit has held that: "[a] copyright holder

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

may give [an] implied license to another 'where the copyright owner engages in conduct from which [another party] may properly infer that the owner consents to his use.'"  *Stevens v. Corelogic, Inc*., 194 F. Supp. 3d 1046, 1053 (S.D. Cal. 2016) (citing *Field v. Google Inc*., 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) ("Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it.")). Furthermore, "[s]ilence or lack of objection may also be the equivalent of [implied consent] especially where the plaintiff knows of the defendant's use…."  *Stevens*, 194 F. Supp. 3d at 1053-54.

The Ninth Circuit's decision in *Falcon Enters. v. Publrs. Serv*., 438 F. App'x 579 (9th Cir. 2011) is illustrative.  In *Falcon*, the plaintiff photographer ("Falcon") regularly provided photographs to the defendant publishing company ("Publishers") for possible use in a magazine, despite no written agreement.  Falcon never declined to grant Publishers a license, and Publishers regularly published Falcon's photographs.  Accordingly, the Court of Appeals held that: "[t]he parties' conduct demonstrates that Falcon granted Publishers an ongoing nonexclusive implied license to use its content for a fee" (and affirmed that Publishers was not liable for copyright infringement).  *Id.* at 581; *see also Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) (dismissing copyright infringement due to implied license) ("Thus, with knowledge of how Google would use the copyrighted works he placed on those pages, and with knowledge that he could prevent such use, Field instead made a conscious decision to permit it.  His conduct is reasonably interpreted as the grant of a license to Google for that use.").

In this case, W3K provided access to its music library to Deep Dish in August 2012 for use in the Program.  [UF 24-26]  Deep Dish duly reported its uses on cue sheets provided to W3K, which identified multiple uses for more than two years. [UF 58-61, 120-122, 212-213]  The cue sheets were provided to W3K from the relevant PROs, who were paying royalties to W3K for uses of its music on the

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

22

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Program.  [UF 123-124]  Yet W3K remained silent.

W3K unambiguously evinced an intent to continue its contractual relationship with Deep Dish for Seasons 2 and 3 by, among other things, providing Deep Dish with updated login and password information to access W3K's library by email on January 25, 2014, which was partway through Season 2.  [UF 117]  This email can only be read in one way: W3K wished Deep Dish to continue to use and exploit W3K's music library for which, at the very least, W3K would continue to receive performance royalties.

At all relevant times, all parties acted in a manner confirming that a license was in place.  W3K continued to correspond with Walsh, and Deep Dish continued to submit cue sheets to the PROs, which would continue to pay royalties to W3K.

## F.   None of the Broadcast, Cable or Satellite Company Defendants Committed Infringement.

Defendants who publicly performed episodes of *Steve Harvey* that included W3K's music on television did so pursuant to licenses with SESAC, which permitted each of them to publicly perform the works of SESAC's affiliates, including W3K.  [UF 123, 127, 129-140]  Defendants who publicly performed the relevant episodes via cable or satellite did so pursuant to their statutory licenses under the United States Copyright Act.  [UF 141-150]  Under Section 111 of the Copyright Act, cable operators (or "cable systems") have no copyright liability where the secondary transmission (of a primary transmission from a broadcast station) is made by a carrier with "no direct or indirect control over the content or selection of the primary transmission . . . and whose activities with respect to the secondary transmission consist solely of providing wires, cables, or other communications channels for the use of others."  17 U.S.C. §§ 111(a)(3), (c)(1).  Similarly, satellite carriers that passively rebroadcast network television stations also qualify for a statutory license under the Copyright Act when they deposit a statement of account and applicable royalty fees with the Copyright Office.  *See* 17

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

U.S.C. §§ 111(a)(4), 119, 122(a).

Because none of these Defendants had any involvement in the production or distribution of the Program, [UF 151-192], and did not otherwise infringe on public performance rights, none of them can be liable for copyright infringement.[21]

Similarly, NBCUniversal had no involvement in selecting any works from W3K's music library for use in the Program, [UF 329], and it distributed the Program, at least insofar as it is relevant to W3K, pursuant to the rights granted in the License agreement, [UF 56], and its syndication license, [UF 193]. Because Section 5.2 of the License specifies that Deep Dish can freely assign all rights in and to the Program to any distributor or subdistributor, NBCUniversal cannot be found liable for copyright infringement.[22]

## G.    W3K's Contributory and Vicarious Infringement Claims Fail as a Matter of Law Because There Are No Direct Infringements.

For the reasons described above, each claim of direct infringement should be dismissed. Therefore the FAC's contributory and vicarious infringement claims should be dismissed as well. *See MDY Indus., LLC v. Blizzard Entm't, Inc.*, Nos. 09-15932, 09-16044, 2011 U.S. App. LEXIS 3428, at *9-10 (9th Cir. Feb. 17, 2011) ("We first consider whether MDY committed contributory or vicarious infringement (collectively, 'secondary infringement') of Blizzard's copyright … **To establish secondary infringement, Blizzard must first demonstrate direct infringement**.") (emphasis added) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019, 1022 (9th Cir. 2001) and *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it…") (internal citations omitted)).

---

[21] Defendants also note that immunity from the risk of infringement for cable and satellite providers is a core innovation of the Copyright Act and W3K's inclusion of these defendants was frivolous, at best.

[22] To the extent W3K alleges that NBCUniversal participated in broadcasting, it too had licenses to publicly perform W3K's works. [UF 330-331]

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

12242107
222309-10004

24

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

### H.    W3K Is Not Entitled to Statutory Damages or Attorneys' Fees.

The Copyright Act precludes W3K from seeking statutory damages or attorneys' fees for infringement of any works that were not registered prior to the commencement of the alleged infringement.  17 U.S.C. § 412 ("[N]o award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced … before the effective date of its registration …").[23]

Statutory damages or attorneys' fees are not available for any of the alleged infringements, since the earliest registration became effective on October 29, 2014, [UF 200], while the latest episode to use W3K's music (from the only applicable registration) aired on October 13, 2014, [UF 212], and the latest download from W3K's website was on October 23, 2014, [UF 327].

Thus, if summary judgment is not granted in its entirety, W3K's claims for statutory damages or attorneys' fees should be dismissed from the case.

## IV.   CONCLUSION

For all of the foregoing reasons, Defendants' motion for summary judgment should be granted in its entirety, and all of W3K's claims should be dismissed.

Dated: May 19, 2017

LOEB & LOEB LLP
BARRY I. SLOTNICK
DAVID GROSSMAN
EDWARD K. LEE

By:   */s/ David Grossman*
David Grossman
Attorneys for Defendants

---

[23] *See also, e.g., Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008) (Section 412(2) "mandates that, in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement" and "the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412."); *id* at 701.

Loeb & Loeb
A Limited Liability Partnership
Including Professional Corporations

12242107
222309-10004

25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT